Jeff H. Galloway
Erik Bond
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, N.Y. 10004
(212) 837-6000 (telephone)
(212) 422-4726 (facsimile)

*Counsel for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION
(Successor To The Connecticut National
Bank), Not in its Individual Capacity but
Solely As Owner Trustee Under Certain Trust
Agreements,

Plaintiff,

-against-

SOUTHWEST AIRLINES COMPANY,

Defendant.

**07 CV 11131**

Case No.: _____

COMPLAINT

JURY TRIAL DEMANDED

In this action, Plaintiff-lessor U.S. BANK NATIONAL ASSOCIATION (Successor To

The Connecticut National Bank), Not in its Individual Capacity but Solely As Owner Trustee

Under Certain Trust Agreements ("Lessor"), seeks damages for breach of contract and a judicial

declaration of certain material rights and obligations under lease agreements for certain Boeing

737 aircraft between Lessor and Defendant-lessee SOUTHWEST AIRLINES COMPANY

("Southwest").

## PARTIES

1.      U.S. Bank National Association is a national banking association with its principal place of business located in Minneapolis, Minnesota.

2.      Defendant is a corporation organized under the laws of the State of Texas with its principal place of business at 2702 Love Field Drive, Dallas, Texas 75235.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1332 and 2201(a).

4.      The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

5.      Venue is proper in this District under 28 U.S.C. § 1391(a) and pursuant to agreement of the parties.

## FACTUAL ALLEGATIONS

6.      On or about June 1, 1987, The Connecticut National Bank (predecessor in interest to U.S. Bank National Association) entered into three substantively identical Trust Agreements with Chrysler Capital Corporation (predecessor in interest to DaimlerChrysler Capital Services (debis) LLC) (the "Owner Participant"), whereby it agreed to act as trustee on behalf of the Owner Participant and, in such trustee capacity (the "Owner Trustee"), take title to certain aircraft and engines and lease such aircraft and engines to Southwest.  Also on or about June 1, 1987, The Connecticut National Bank, in its capacity as Owner Trustee and as lessor, entered into three substantively identical aircraft lease agreements with Southwest, as lessee, concerning three Boeing 737-3H4 aircraft, bearing FAA numbers N319SW (the "319 Aircraft"), N320SW (the "320 Aircraft") and N321SW (the "321 Aircraft") (collectively, the "Aircraft").  The foregoing leases were subsequently amended by written agreements to extend the Lease terms, as

provided in such written amendments. (These leases, as amended, shall be referred to as the "Leases".)

7.    Each of the Aircraft was equipped at the commencement of the term of the Leases with two General Electric model CFM56-3B1 engines (collectively, the "Engines").

8.    Lessor is the successor-in-interest to The Connecticut National Bank and, as such, has succeeded to all rights of the lessor as provided in the Leases.

**Relevant Provisions of the Leases**

9.    The Leases define "Aircraft" in Section 1 as follows:

> "Aircraft" means, as the context may require, the Airframe delivered and leased hereunder (or any airframe from time to time substituted for such Airframe pursuant to Section 10(a) hereof) together with the Engines initially installed thereon and leased hereunder (or any engine substituted for any of such Engines pursuant to the terms hereof), whether or not any such initial or substituted Engines may from time to time be installed on such initial or substituted Airframe or may be installed on any other airframe or on any other aircraft."

10.    The Leases define "Engine" in Section 1 as follows:

> "Engine" means (i) each of the two CFM International Model CFM 56-3-B1 engines listed by manufacturer's serial number in the initial Lease Supplement in connection with the Airframe, whether or not from time to time installed on such Airframe or installed on any other airframe or on any other aircraft; and (ii) any engine which may from time to time be substituted, pursuant to the terms hereof, for any of such engines, together in each case with any and all Parts incorporated or installed in or attached thereto or any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the terms of Section 8 after removal from such engine; provided, however, that at such time as an engine shall be deemed part of the property leased hereunder in substitution for an Engine pursuant to the applicable provisions hereof, the replaced Engine shall cease to be an Engine hereunder. The term "Engines" means, as of any date of determination, all Engines then leased hereunder." (Underscoring in original).

11.    The Leases have specific language governing a lessee's return of engines other than the leased Engines. Section 5(a) of the Leases provides in relevant part:

"[U]pon the termination of this Lease . . ., Lessee, at its own expense, will return the Aircraft to Lessor at Lessee's principal maintenance facility in the 48 contiguous States of the United States (subject to Section 5(d) hereof). At the time of such return, the Airframe will be fully equipped with two Engines (*or other engines of the same make and model* or two other engines of the same or another manufacturer of equivalent utility and value, and suitable for installation and use on the Airframe without impairing the value or utility of the Aircraft) duly installed thereon. Also, at the time of such return, such Airframe and Engines or engines . . . (iii) shall be in passenger configuration and in as good operating condition as when delivered to Lessee hereunder, ordinary wear and tear excepted, or, *in the case of any such engines owned by Lessee, shall have a value and utility at least equal to*, and shall be in as good operating condition as required by the terms hereof with respect to *Engines constituting part of the Aircraft but not then installed on the Airframe* . . . ." (Emphasis added).

12.     The Leases obligate Southwest to pay Lessor's attorneys' fees and costs in enforcing provisions regarding return of the Aircraft and engines. Section 15 provides in relevant part:

"In addition, Lessee shall be liable, except as otherwise provided above without duplication of amounts payable hereunder, . . . for all reasonable and actual legal fees and other costs and expenses (including fees of the appraisers hereinabove referred to) incurred by Lessor, the Mortgagee and the Owner Participant in connection with the return of the Airframe or Engine in accordance with the terms of Section 5 or in placing such Airframe or Engine in the condition and airworthiness required by such Section."

13.     Lessor, the Owner Participant and Southwest are parties to Participation Agreements with respect to each Lease, section 7(c) of each such Participation Agreement providing that Southwest will:

"indemnify [Owner Trustee and Owner Participant]. . . protect, save and keep harmless each thereof from . . . any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, out-of-pocket costs, expenses and disbursements (including reasonable legal fees and expenses and Transaction Expenses to the extent not required to be paid by the Owner Trustee pursuant to Section 16 but excluding internal costs and expenses such as salaries and overhead), of whatsoever kind and nature (collectively called 'Expenses') imposed on, incurred by or asserted against any Indemnitee or any successors, permitted assigns, directors, officers, employees, servants or agents thereof, in any way relating to or arising out of (A) the Operative Documents [including the Leases] (including, without limitation, because of Lessee's failure to

4

perform any covenant, condition or agreement contained therein) . . . or the enforcement of any of the terms thereof, . . . (C) the ownership, delivery, nondelivery, lease, sublease, possession, use, operation, condition, maintenance, overhaul, testing, registration, sale, return or other disposition of the Aircraft . . . ."

14.     Section 5(e) of the Leases requires Southwest to cooperate with Lessor's efforts to remarket the aircraft:

"Lessee agrees that . . . it will cooperate . . . in all reasonable respects with any efforts of Lessor to lease or sell the Aircraft, including without limitation (subject to the provisions of Section 12) permitting potential lessees or purchasers to inspect the Aircraft and the records relating thereto."

15.     Section 23 of the Leases contains a choice of forum clause vesting jurisdiction in this Court:

"Lessor and Lessee each hereby irrevocably submits itself to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and to the non-exclusive jurisdiction of the Supreme Court of the State of New York, New York County, for purposes of any suit, action or other proceeding arising out of this Lease, the subject matter hereof or any of the transactions contemplated hereby brought by Lessor, Lessee, the Mortgagee or the Owner Participant or their respective successors or assigns."

16.     Section 24 of the Leases contains a New York choice-of-law clause:

"This Lease has been delivered in the State of New York and shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance."

**The Dispute Between Lessor and Southwest**

17.     Southwest is obligated under the Leases to return the Aircraft to Lessor as follows: the 319 Aircraft on December 19, 2007; the 320 Aircraft on January 15, 2008; and the 321 Aircraft on January 31, 2008.

18.     In reliance on the expectation that Southwest would comply with its obligations under the Leases, Lessor, through the Owner Participant, began to market the Aircraft during the months prior to the expiration of the Leases.

19.    On or about September 28, 2007, AeroTurbine, Inc. ("AeroTurbine") submitted an Offer Letter, pursuant to which AeroTurbine offered to purchase the Aircraft, including the Engines (based on the information that Lessor then had regarding the condition of the Aircraft, including the Engines), for a total purchase price of $19,800,000.

20.    On October 19, 2007, Southwest notified Lessor, through the Owner Participant, that it did not intend to return the Engines specified in the Leases upon return, but rather that it would substitute inferior engines that do not have "a value and utility at least equal to" the original Engines.

21.    In fact, the engines that Southwest stated it would return with the Aircraft have a value of approximately $10,000,000 less than the value of the Engines.

22.    As a result of Southwest's improper substitution of inferior engines for the leased Engines, AeroTurbine has withdrawn its offer to purchase the Aircraft, and Lessor, through the efforts of the Owner Participant, has been unable to find another purchaser for the Aircraft that would be prepared to pay a purchase price in any amount except millions of dollars less than the $19,800,000 price previously offered by AeroTurbine.

23.    Lessor, through the Owner Participant, has demanded that Southwest perform its obligations under the Leases and commit to return either the Engines or engines with "a value and utility at least equal to" the Engines. Southwest has refused and has taken the position that it is not required to return either the Engines or engines with "a value and utility at least equal to" the Engines.

## COUNT I – DECLARATORY JUDGMENT

24.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23, above, as if fully set forth herein.

25.    Southwest has declared that it will neither return the Engines nor engines with "a value and utility at least equal to" the Engines, and disputes that this is required under the Leases, notwithstanding the language of Section 5(a) of the Leases.

26.    Lessor continues to take the position that the language of Section 5(a) of the Leases is clear on its face and requires Southwest to return either the Engines or engines "of a value and utility at least equal to" the Engines specified in the Leases.

27.    By reason of the foregoing, an actual controversy exists between Lessor and Southwest as to whether the Leases are breached by Southwest's substitutions of inferior engines on the Aircraft.

28.    Lessor is entitled to a judicial declaration clarifying and declaring the rights of the parties and establishing that Southwest's substitution of inferior engines is a breach of the Leases.

## COUNT II – BREACH OF CONTRACT

29.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23, above, as if fully set forth herein.

30.    Southwest breached its obligations under the Section 5(e) of the Leases by failing to cooperate "in all reasonable respects with any efforts of Lessor to lease or sell the Aircraft," including, *inter alia*, by stating its refusal to return either the Engines or engines with "a value and utility at least equal to" the Engines.

31.    Lessor and the Owner Participant have suffered and continue to suffer damages, including lost profits on the sale of the Aircraft, as a result of Southwest's breach, in an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, Lessor prays for judgment against Southwest as follows:

      (a)      For a declaratory judgment that the Leases require Southwest to return either the Engines or engines with "a value and utility at least equal to" the Engines specified in the Leases;

      (b)      For a judgment awarding damages to Lessor in an amount to be determined at trial for Southwest's breach of contract;

      (c)      For an award of attorneys' fees, costs and interest;

      (d)      For such other relief that the Court deems proper, just and equitable.

Dated:      New York, New York
            December 10, 2007

                    Respectfully submitted,

                    HUGHES HUBBARD & REED, LLP

                    Jeff H. Galloway
                    (galloway@hugheshubbard.com)
                    Erik Bond
                    (bond@hugheshubbard.com)
                    One Battery Park Plaza
                    New York, N.Y. 10004
                    (212) 837-6000 (telephone)
                    (212) 422-4726 (facsimile)

                    *Attorneys for Plaintiff*