Jeff H. Galloway
Erik Bond
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, N.Y. 10004
(212) 837-6000 (telephone)
(212) 422-4726 (facsimile)

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION (Successor To The Connecticut National Bank), Not in its Individual Capacity but Solely As Owner Trustee Under Certain Trust Agreements,<br><br>                                      Plaintiff,<br><br>-against-<br><br>SOUTHWEST AIRLINES COMPANY,<br><br>                                    Defendant. | Case No.: 07 CIV 11131 (DLC)<br><br>AMENDED COMPLAINT |

In this action, Plaintiff-lessor U.S. BANK NATIONAL ASSOCIATION (Successor To The Connecticut National Bank), Not in its Individual Capacity but Solely As Owner Trustee Under Certain Trust Agreements ("Lessor"), seeks damages for breach of contract under lease agreements for certain Boeing 737 aircraft between Lessor and Defendant-lessee SOUTHWEST AIRLINES COMPANY ("Southwest").

## PARTIES

1.  U.S. Bank National Association is a national banking association with its principal place of business located in Cincinnati, Ohio.

2. Defendant is a corporation organized under the laws of the State of Texas with its principal place of business at 2702 Love Field Drive, Dallas, Texas 75235.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1332.

4. The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) and pursuant to agreement of the parties.

## FACTUAL ALLEGATIONS

6. On or about June 1, 1987, The Connecticut National Bank (predecessor in interest to U.S. Bank National Association) entered into three substantively identical Trust Agreements with Chrysler Capital Corporation (predecessor in interest to DaimlerChrysler Capital Services (debis) LLC) (the "Owner Participant"), whereby it agreed to act as trustee on behalf of the Owner Participant and, in such trustee capacity (the "Owner Trustee"), take title to certain aircraft and engines and lease such aircraft and engines to Southwest.  Also on or about June 1, 1987, The Connecticut National Bank, in its capacity as Owner Trustee and as lessor, entered into three substantively identical aircraft lease agreements with Southwest, as lessee, concerning three Boeing 737-3H4 aircraft, bearing FAA numbers N319SW (the "319 Aircraft"), N320SW (the "320 Aircraft") and N321SW (the "321 Aircraft") (collectively, the "Aircraft").  The foregoing leases were subsequently amended by written agreements to extend the Lease terms, as provided in such written amendments.  (These leases, as amended, shall be referred to as the "Leases".)

7. Each of the Aircraft was equipped at the commencement of the term of the Leases with two General Electric model CFM56-3B1 engines (collectively, the "Engines").

8. Lessor is the successor-in-interest to The Connecticut National Bank and, as such, has succeeded to all rights of the lessor as provided in the Leases.

**Certain Provisions of the Leases**

9. The Leases define "Aircraft" in Section 1 as follows:

> "Aircraft" means, as the context may require, the Airframe delivered and leased hereunder (or any airframe from time to time substituted for such Airframe pursuant to Section 10(a) hereof) together with the Engines initially installed thereon and leased hereunder (or any engine substituted for any of such Engines pursuant to the terms hereof), whether or not any such initial or substituted Engines may from time to time be installed on such initial or substituted Airframe or may be installed on any other airframe or on any other aircraft."

10. The Leases define "Engine" in Section 1 as follows:

> "Engine" means (i) each of the two CFM International Model CFM 56-3-B1 engines listed by manufacturer's serial number in the initial Lease Supplement in connection with the Airframe, whether or not from time to time installed on such Airframe or installed on any other airframe or on any other aircraft; and (ii) any engine which may from time to time be substituted, pursuant to the terms hereof, for any of such engines, together in each case with any and all Parts incorporated or installed in or attached thereto or any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the terms of Section 8 after removal from such engine; <u>provided</u>, <u>however</u>, that at such time as an engine shall be deemed part of the property leased hereunder in substitution for an Engine pursuant to the applicable provisions hereof, the replaced Engine shall cease to be an Engine hereunder. The term "Engines" means, as of any date of determination, all Engines then leased hereunder." (Underscoring in original).

11. The Leases have specific language governing a lessee's return of engines other than the leased Engines. Section 5(a) of the Leases provides in relevant part:

> "[U]pon the termination of this Lease . . ., Lessee, at its own expense, will return the Aircraft to Lessor at Lessee's principal maintenance facility in the 48 contiguous States of the United States (subject to Section 5(d) hereof). At the time of such return, the Airframe will be fully equipped with two Engines (***or other engines of the same make and model*** or two other engines of the same or another manufacturer of equivalent utility and value, and suitable for installation and use on the Airframe without impairing the value or utility of the Aircraft) duly installed thereon. Also, at the time of such return, such Airframe and Engines or engines . . . (iii) shall be in passenger configuration

3

> and in as good operating condition as when delivered to Lessee hereunder, ordinary wear and tear excepted, or, ***in the case of any such engines owned by Lessee, shall have a value and utility at least equal to***, and shall be in as good operating condition as required by the terms hereof with respect to ***Engines constituting part of the Aircraft but not then installed on the Airframe*** . . . In the event that Lessee (or any Sublessee then in possession of the Aircraft) shall then be using an on-condition maintenance program with respect to the Engines or engines installed on the Airframe upon return, Lessee agrees that each such Engine or engine will have at least 1,750 hours or cycles remaining before the next scheduled engine removal, failing which Lessor may elect either for Lessee to perform (or cause to be performed) any maintenance check required (in which event Lessor shall reimburse Lessee pro rata for the cost of such maintenance check to the extent such check places such Engine or engine in a condition, based on hours remaining to the next scheduled engine removal, better than the condition in which such Engine or engine is required to be returned pursuant to this Section 5) or for Lessee to make a financial adjustment at the rate then charged by Lessee to third parties for performing such work, or if Lessee does not perform such work, at the rate then charged by a reputable independent FAA approved maintenance facility mutually agreed upon by Lessee and the Owner Participant." (Emphasis added).

12.   Section 5(d) of the Leases require Southwest to provide thirty days free parking facilities for the Aircraft after return.

13.   The Leases require the Aircraft be maintained as well as Lessee's other aircraft, and to the standard required by the Federal Aviation Administration. Section 7(a) provides in relevant part:

> "Lessee, at its own cost and expense, shall . . . (ii) maintain, service, repair and overhaul (or cause to be maintained, serviced, repaired and overhauled) the Aircraft (x) so as to keep the Aircraft in good operating condition, ordinary wear and tear excepted, (y) so as to keep the Aircraft maintained in the same manner and with the same care as used by Lessee with similar aircraft owned by Lessee, and (z) so as to keep such Aircraft in such condition as may be necessary to enable the applicable airworthiness certification for such Aircraft to be maintained in good standing at all times under the Federal Aviation Act . . . ."

14.   The Leases obligate Southwest to pay the attorneys' fees and costs of the Lessor and Owner Participant in enforcing provisions regarding return of the Aircraft and engines. Section 15 provides in relevant part:

> "In addition, Lessee shall be liable, except as otherwise provided above without duplication of amounts payable hereunder, . . . for all reasonable and actual legal fees and other costs and expenses (including fees of the appraisers hereinabove referred to) incurred by Lessor, the Mortgagee and the Owner Participant in connection with the return of the Airframe or Engine in accordance with the terms of Section 5 or in placing such Airframe or Engine in the condition and airworthiness required by such Section."

15. Lessor, the Owner Participant and Southwest are parties to Participation Agreements with respect to each Lease, section 7(c) of each such Participation Agreement providing that Southwest will:

> "indemnify [Owner Trustee and Owner Participant]. . . protect, save and keep harmless each thereof from . . . any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, out-of-pocket costs, expenses and disbursements (including reasonable legal fees and expenses and Transaction Expenses to the extent not required to be paid by the Owner Trustee pursuant to Section 16 but excluding internal costs and expenses such as salaries and overhead), of whatsoever kind and nature (collectively called 'Expenses') imposed on, incurred by or asserted against any Indemnitee or any successors, permitted assigns, directors, officers, employees, servants or agents thereof, in any way relating to or arising out of (A) the Operative Documents [including the Leases] (including, without limitation, because of Lessee's failure to perform any covenant, condition or agreement contained therein) . . . or the enforcement of any of the terms thereof, . . . (C) the ownership, delivery, nondelivery, lease, sublease, possession, use, operation, condition, maintenance, overhaul, testing, registration, sale, return or other disposition of the Aircraft . . . ."

16. Section 5(e) of the Leases requires Southwest to cooperate with Lessor's efforts to remarket the aircraft:

> "Lessee agrees that . . . it will cooperate . . . in all reasonable respects with any efforts of Lessor to lease or sell the Aircraft, including without limitation (subject to the provisions of Section 12) permitting potential lessees or purchasers to inspect the Aircraft and the records relating thereto."

17. Section 23 of the Leases contains a choice of forum clause vesting jurisdiction in this Court:

> "Lessor and Lessee each hereby irrevocably submits itself to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and to the non-exclusive jurisdiction of the Supreme

>   Court of the State of New York, New York County, for purposes of any suit, action or other proceeding arising out of this Lease, the subject matter hereof or any of the transactions contemplated hereby brought by Lessor, Lessee, the Mortgagee or the Owner Participant or their respective successors or assigns."

18.   Section 24 of the Leases contains a New York choice-of-law clause:

>   "This Lease has been delivered in the State of New York and shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance."

**The Dispute Between Lessor and Southwest**

19.   Upon information and belief, Southwest has failed to properly maintain certain aircraft in its fleet, including the Aircraft, over the past several years and has recently received a record $10.2 million fine from the Federal Aviation Administration for failure to properly maintain its aircraft.

20.   Southwest breached its obligations under section 7(a) of the Leases by failing to fulfill the required maintenance conditions.

21.   Southwest was obligated under the Leases to return the Aircraft to Lessor as follows: the 319 Aircraft on December 19, 2007; the 320 Aircraft on January 15, 2008; and the 321 Aircraft on January 31, 2008.

22.   In reliance on the expectation that Southwest would comply with its obligations under the Leases, Lessor, through the Owner Participant, began to market the Aircraft during the months prior to the expiration of the Leases.

23.   For example, on or about September 28, 2007, AeroTurbine, Inc. ("AeroTurbine") submitted an Offer Letter, pursuant to which AeroTurbine offered to purchase the Aircraft, including the Engines (based on the information that Lessor then had regarding the condition of the Aircraft, including the Engines).

24. Shortly before the return dates of the Aircraft as provided for by the Leases, and after Plaintiff received AeroTurbine's Offer Letter, Southwest informed Plaintiff, through the Owner Participant, that it would be returning each of the Aircraft in a condition that, as Plaintiff alleges herein, would place the Aircraft in breach of the Leases.  Thereupon, AeroTurbine withdrew its Offer Letter.

25. In addition, prior to the return of the Aircraft, Southwest failed to timely allow Plaintiff, acting through the Owner Participant, access to inspect the Aircraft and records relating thereto.

26. On or about January 22, 2008, Southwest returned the 319 Aircraft; on or about February 12, 2008, Southwest returned the 320 Aircraft; on or about February 29, 2008, Southwest returned the 321 Aircraft.  Each of the Aircraft was returned later than the time prescribed by the Leases, without payment or tender of additional rent due by reason of such late return.

27. Southwest refused to provide the contractually required thirty days free parking for the 319 Aircraft upon return, causing extra expenses to be incurred.

28. On return, the condition of each of the Aircraft was in fact in breach of the Leases and the Participation Agreements:

    (a) Southwest returned the Aircraft with replacement engines with a value and utility far below the value and utility of the Engines of the Aircraft;

    (b) Southwest failed to keep the Aircraft maintained in the same manner and with the same care as similar aircraft it owns and/or to keep the Aircraft in such condition as required by its own maintenance program or by the Federal Aviation Administration;

(c) Each of the 319 and 320 Aircraft had one engine installed at the time of return that was not serviceable.

(d) Each Aircraft suffered a number of other deficiencies, which have been itemized to Southwest;

(e) Equipment that was required to be returned with the Aircraft was either missing or had been improperly substituted with inferior equipment.

29. Southwest has failed to pay the financial adjustment that would be due upon the return of each of the Aircraft if Southwest were correct that it was entitled to return the engines returned instead of the Engines.

30. Southwest failed to cooperate "in all reasonable respects with any efforts of Lessor to lease or sell the Aircraft," including, *inter alia*, by belatedly providing notice of its intent to return each of the Aircraft in a condition that, Plaintiff alleges, was in breach of the Leases, by failing to allow timely inspection of the Aircraft and records relating thereto, by failing to provide relevant Aircraft records in a timely or customary manner, and by returning the Aircraft later than the time prescribed by the Leases.

31. Southwest has failed to reimburse Lessor or the Owner Participant for the reasonable and actual legal fess and other costs and expenses incurred by them in connection with the return of the Aircraft in accordance with the terms of Section 5 or in placing the Aircraft in the condition and airworthiness required by such Section.

32. Southwest has failed to reimburse Lessor or the Owner Participant for the reasonable and actual legal fess and other costs and expenses incurred by them in connection with the return of the Aircraft in the conditions and under the circumstances described herein.

33. On March 4, 2008, the Aircraft were sold to AAR Parts Trading, Inc. for an aggregate amount substantially less than what would have been the case had Southwest not breached the Leases.

## COUNT I – BREACH OF CONTRACT

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33, above, as if fully set forth herein.

35. Southwest breached its obligations under the Leases and the Participation Agreements.

36. Lessor and the Owner Participant have suffered and continue to suffer damages, including, but not limited to, lost profits on the sale of the Aircraft, as a result of Southwest's breaches, in an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, Lessor prays for judgment against Southwest as follows:

(a) For a judgment awarding damages to Lessor in an amount to be determined at trial for Southwest's breaches of contract;

(b) For an award of attorneys' fees, costs and interest;

      (c)    For such other relief that the Court deems proper, just and equitable.

Dated:      New York, New York
                 March 28, 2008

                             Respectfully submitted,

                             HUGHES HUBBARD & REED LLP


                               /s/ Jeff H. Galloway
                             Jeff H. Galloway
                             (galloway@hugheshubbard.com)
                             Erik Bond
                             (bond@hugheshubbard.com)
                           One Battery Park Plaza
                           New York, N.Y. 10004
                           (212) 837-6000 (telephone)
                           (212) 422-4726 (facsimile)

                           *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Jeff H. Galloway, do hereby certify that I am over the age of 18 and not a party to this action and that on the 28th day of March, 2008, I did cause to be served a true and correct copy of Plaintiff's Amended Complaint via electronic filing on:

>Michael Tremonte
>Email: mtremonte@cohengresser.com
>Harvey Bernard Silikovitz
>Email: hsilikovitz@cohengresser.com
>Marc E. Isserles
>Email: misserles@cohengresser.com
>Cohen & Gresser, LLP
>100 Park Avenue, 23rd Flr.
>New York, NY 10017
>(212)-957-7609
>Fax: (212)-957-4514
>
>Attorneys for Defendant

I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York, this 28th day of March, 2008.

/s/ Jeff H. Galloway